**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ADRIAN WASHINGTON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 4:24-cv-01561-JAR |
| | ) | |
| RICHARD ADAMS, | ) | |
| | ) | |
| Respondent. | ) | |

# MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Adrian Washington's petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. For the following reasons, Petitioner's Section 2254 petition will be denied.

## I. Background

On January 18, 2016, four men—Antoine Bland, Donald Brown, Curly Cunningham, and Cedal Clay—planned to see a movie. They got into Bland's car with Bland driving, Brown in the passenger seat, and Cunningham and Clay in the back seat. On the way to the movie theater, Bland received a call on his cellphone from a contact saved as "Baldhead," a moniker Bland's passengers could see on his dashboard console because his phone was connected to the car's system. Brown had previously met Baldhead on three or four occasions, and Cunningham had met Baldhead earlier on January 18 when Bland and Baldhead met for a brief conversation. Baldhead asked to meet Bland for a drug sale.

Bland and Baldhead each pulled into an alley, parked, and exited their cars. While they talked, a masked man armed with a revolver exited Baldhead's car and got into Bland's through the driver-side door. The masked man pointed his gun at Brown, Cunningham, and Clay,

demanded they hand over their possessions, and took money, phones, and cigarettes from the three men. During the robbery, Bland's friends witnessed Baldhead drawing a revolver and firing one shot toward Bland's head. Baldhead then yelled to the masked man to "[f]inish the job" or "get it over with." ECF No. 10-8 at 3. Brown fired multiple rounds from a Glock 42 that he legally carried, and the masked man returned fire, shooting Brown in the hip and head. The masked man and Baldhead then fled.

When police arrived, Brown threw his gun onto the ground to indicate that he was unarmed, and the officers seized the weapon for forensic testing. Bland died at the scene. Brown was transported to the hospital, where he informed police that Baldhead had shot Bland, and police seized a phone and other personal property from Brown. Cunningham told police that the shooter was bald with skin pigmentation on his face and hands.

Through a search warrant, the police obtained Bland's phone records and discovered that Bland had exchanged seventy-three calls with a number associated with Petitioner in the five days leading up to the shooting. Several of those calls had taken place in the minutes before the shooting. Petitioner, who has vitiligo and was bald at the time of the shooting, was identified as a suspect.

Because of Petitioner's skin condition, Detective Roger Murphey of the St. Louis Metropolitan Police Department prepared a photographic lineup by manually searching the department's crime matrix system for photos of men with skin pigmentation. The lineup featured a photo of Petitioner and several filler photos of men with skin pigmentation. With the exception of Petitioner, none of the men pictured were bald. Brown, Cunningham, and Clay each identified Petitioner as the man who shot Bland.

Following Brown's identification, Detective Murphey issued a "wanted" poster to the department with Petitioner's photo and other information. ECF No. 10-1 at 508–09. On February 9, 2016, Officer Tim Nolan was on patrol with other officers in a marked vehicle and saw Petitioner, whom he recognized from the wanted poster, in a truck. *Id.* at 551–52. The officers began to pursue Petitioner, who performed a U-turn, merged onto the highway, and drove at over 100 miles per hour, successfully evading the officers. *Id.* at 554–56. Petitioner was arrested three days later. *Id.* at 612.

At trial, counsel engaged in the following colloquy with Detective Murphey regarding the composition of the photographic lineup:

| | |
|---|---|
| Trial Counsel: | [Petitioner] was the only one with a bald head? |
| Detective: | Correct. |
| Trial Counsel: | You were working off the nickname [B]aldhead, right? |
| Detective: | Correct. |
| … | |
| Trial Counsel: | You would agree that if you are able to find a photo or if you had a photo of [Petitioner] with some type of hair that … you would have put that in there, that would have made a more fair or reliable lineup, right? |
| Detective: | Correct. |

ECF No. 10-1 at 523–24. Trial counsel then impeached Detective Murphey by showing several of Petitioner's prior booking photos in which Petitioner had hair. The unredacted booking photos listed the date of arrest, jurisdiction, case number, and Petitioner's height, weight, and age at arrest. In response, Detective Murphey testified that although he had had access to the photos through the crime matrix system, the photos showing Petitioner with hair were too old to be used in the lineup.

Dr. Karen Preiter, a DNA Analyst at the St. Louis Metropolitan Police Department, testified at trial regarding various DNA samples taken from the crime scene. Regarding Brown's

gun, Dr. Preiter testified that the DNA collected from the weapon was consistent with the DNA profile of an "unknown male" who could not be identified through the department's database. *Id.* at 641–42. The police report matched the DNA to Brown, but Petitioner's counsel did not introduce this evidence at trial. ECF No. 10-5 at 16–17.

On May 7, 2018, the jury found Petitioner guilty of one count of second-degree murder, four counts of first-degree robbery, five counts of armed criminal action, and one count of resisting a lawful stop. On June 29, 2018, Petitioner was sentenced to a total of 150 years' imprisonment. ECF No. 1 at 2. Petitioner filed a direct appeal arguing that (1) the trial court erred in denying his motion to suppress the pre-trial identifications and (2) there was insufficient evidence to support his conviction for resisting arrest by flight. Finding no error, the Missouri Court of Appeals for the Eastern District affirmed the judgment. ECF No. 10–4 at 1.

After his convictions were affirmed on direct appeal, Petitioner filed a motion for post-conviction relief under Missouri Supreme Court Rule 29.15.[1] The motion was denied, and the Missouri Court of Appeals for the Eastern District affirmed the judgment, issuing its mandate on January 18, 2024. ECF No. 10-9 at 2.

Petitioner then filed a timely Section 2254 petition raising seven grounds for relief:

(1) The trial court erred in denying Petitioner's motion to suppress the pre-trial identifications. ECF No. 1 at 8.

(2) There was insufficient evidence to prove that Petitioner fled a lawful stop. *Id.* at 10.

(3) There was insufficient evidence to prove that Petitioner committed the robberies of Brown, Cunningham, and Clay on a theory of accomplice liability. The attendant armed criminal action charges were also insufficiently proven. *Id.* at 14.

[1] Petitioner's pro se motion was stamped by the circuit clerk's office as filed on November 26, 2019, though the electronic case was not generated until December 2, 2019. *See* ECF Nos. 27-1, 10-11; *Lewis v. State*, 845 S.W.2d 137, 138 (Mo. Ct. App. 1993) (holding that a post-conviction motion is filed under Missouri law when "deposited with the circuit court clerk and lodged in the clerk's office" (citation omitted)).

(4) Trial counsel rendered ineffective assistance by admitting Petitioner's prior booking photos without redaction or a limiting instruction. *Id.* at 17.

(5) Trial counsel rendered ineffective assistance by failing to impeach Brown's testimony that his phone and money were stolen. *Id.* at 18.

(6) Trial counsel rendered ineffective assistance by failing to (i) present evidence that Brown's DNA was on his gun; (ii) call Alfred Brown as a witness at trial; and (iii) argue the witnesses' motive to lie. *Id.* at 20.

(7) Trial counsel rendered ineffective assistance by failing to object to variances between the charging instrument and the conduct described in the jury instructions regarding the robberies of Cunningham and Clay. *Id.* at 23.

## II. Standard of Review

When a claim has been adjudicated on the merits in state court proceedings, habeas relief is permissible under the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(d), only if the state court's determination:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A state court's decision is "contrary to" clearly established law if "it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141 (2005). "[T]he state court need not cite or even be aware of the governing Supreme Court cases, 'so long as neither the reasoning nor the result of the state-court decision contradicts them." *Brown v. Luebbers*, 371 F.3d 458, 467 (8th Cir. 2004) (quoting *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam)).

A decision involves an "unreasonable application" of clearly established law if "the state court correctly identifies the governing legal principle from [the Supreme Court's] decisions but unreasonably applies it to the facts of the particular case." *Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he ruling must be 'objectively unreasonable, not merely wrong; even clear error will not suffice.'" *Virginia v. LeBlanc*, 582 U.S. 91, 94 (2017) (quoting *Woods v. Donald*, 575 U.S. 312, 316 (2015) (per curiam)).

When reviewing whether a state court decision involves an "unreasonable determination of the facts," state court findings of "basic, primary, or historical facts" are presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence. *Collier v. Norris*, 485 F.3d 415, 423 (8th Cir. 2007) (citation modified); *accord* 28 U.S.C. § 2254(e)(1). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).

## III. Discussion

### A. Due Process

In Claim I, Petitioner argues that the trial court's decision to deny his motion to suppress Brown, Clay, and Cunningham's out-of-court identifications violated his constitutional right to due process because the identifications resulted from suggestive photographic lineups. Petitioner raised this issue on direct appeal, arguing that the lineups were unnecessarily suggestive because Petitioner was the only bald individual pictured in the lineup and the suspect was known as "Baldhead."

The Missouri Court of Appeals carefully considered Petitioner's arguments in light of applicable law and found that he failed to demonstrate that the lineups were impermissibly

suggestive. Although the court did not expressly invoke the applicable Supreme Court precedents, *Luebbers*, 371 F.3d at 467, it identified the appropriate two-pronged standard: "The first prong asks whether the pre-trial identification procedure was impermissibly suggestive. If so, then we assess the impact that the suggestive procedure had on the reliability of the identification."[2] ECF No. 4 at 3 (quoting *State v. Morgan*, 480 S.W.3d 349, 351 (Mo. Ct. App. 2015)); *see Perry v. New Hampshire*, 565 U.S. 228, 238–40 (2012) (reiterating the Court's two-pronged inquiry for evaluating due process claims regarding eyewitness identifications). The court then reasonably applied that standard, noting the reasonable efforts that police took to select lineup participants who were physically similar to Petitioner, which included manually searching the crime matrix system to find individuals with skin conditions that resembled Petitioner's. Although none of the individuals found were bald, and the officers chose not to use photos of Petitioner with hair that were between six and fourteen years old, the court concluded that the lineups were not impermissibly suggestive. In its words, "[t]he decision to prioritize similar skin conditions over similar hair and the choice of a recent bald photograph of Defendant rather than an older one with hair were reasonable measures aimed at ensuring that the lineup was not suggestive." ECF No. 4 at 3.

This Court agrees. Because Petitioner's vitiligo was a prominent feature, Detective Murphey reasonably chose to include individuals with similar skin conditions rather than selecting bald individuals without variations in skin pigmentation. Moreover, the Eighth Circuit has explained that "[r]easonable variations in hair length … are not impermissibly suggestive, especially as they can vary on any given person at different times." *Schawitsch v. Burt*, 491 F.3d

---

[2] That the court assessed whether the lineup was impermissibly suggestive rather than unnecessarily so is immaterial, as the Supreme Court has used both terms interchangeably. *See Sexton v. Beaudreaux*, 585 U.S. 961, 965–66 (2018).

798, 803 (8th Cir. 2007); *see also United States v. House*, 823 F.3d 482, 486 (8th Cir. 2016) (holding that a lineup was not impermissibly suggestive where the suspect was described as having a ponytail and the defendant was the only individual pictured with a ponytail). Accordingly, the trial court's decision to admit the identification evidence was neither contrary to nor involved an unreasonable application of clearly established federal law as determined by the Supreme Court.

**B. Ineffective Assistance of Counsel**

Petitioner's fourth, fifth, and sixth grounds for relief all claim ineffective assistance of trial counsel. Federal habeas review of such claims is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). First, a petitioner must overcome the high bar of *Strickland v. Washington*, 466 U.S. 668 (1984) by showing that (1) "counsel's performance was deficient" and (2) petitioner was prejudiced such that "the result of the proceeding would have been different" absent the deficiency. *Id.* at 687, 694. Second, under 28 U.S.C. § 2254, Petitioner must demonstrate that the state court's adjudication of his ineffective assistance claim was "unreasonable." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). Ultimately, "[t]he question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* at 105.

**Claim IV: Booking Photos**

Petitioner asserts that counsel rendered ineffective assistance by admitting his prior booking photos without redaction or a limiting instruction. At trial, Detective Murphey testified that it would have been fairer to use a photo of Petitioner with hair for the lineup, but that he had not had access to such a photo. ECF No. 10-1 at 524. To impeach Detective Murphey's

testimony and to cast doubt on the identifications, trial counsel introduced several of Petitioner's unredacted booking photos, some of which captured Petitioner with hair. ECF No. 10-5 at 28, 32.

As the Missouri Court of Appeals recognized, the booking photos could—and perhaps should—have been redacted or admitted with a limiting instruction. But review of counsel's performance is "highly deferential," and the Court must make "every effort … to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Applying *Strickland*'s exceedingly deferential standard, the Eighth Circuit concluded that a similar misstep at trial did not warrant habeas relief in *Underdahl v. Carlson*, 381 F.3d 740 (8th Cir. 2004). There, trial counsel opened the door to evidence of the petitioner's prior bad acts on direct examination of a witness. *Id.* at 743. During state post-conviction review, the court concluded that trial counsel's decision to open the door was reasonable, even though the prior bad acts would not otherwise have come into evidence. *Id.* On federal habeas review, the Eighth Circuit affirmed that the state court's holding was not an unreasonable application of clearly established federal law. *Id.* As in *Underdahl*, where trial counsel's strategic decision to open the door to inculpatory evidence was found to be reasonable, the Missouri Court of Appeals determined that trial counsel's pursuit of its misidentification strategy was reasonable, even if it led to the admission of evidence that was both "helpful and harmful." ECF No. 10-8 at 14 (quoting *State v. Parker*, 886 S.W.2d 908, 931 (Mo. 1994)). Under the doubly deferential standard applicable to Petitioner's claim, the Court cannot say that the state court's holding was an unreasonable application of clearly established federal law.

**Claim V: Brown's Phone**

Petitioner submits that counsel rendered ineffective assistance by failing to adduce evidence that Brown's phone had not been stolen. Brown testified at trial that the masked man

took his phone and money, but police seized a phone from Brown following the robbery. ECF No. 10-1 at 304; ECF No. 10-5 at 32. Petitioner contends that this evidence would have impeached Brown's credibility and negated one of the elements of first-degree robbery as to Brown.

The Missouri Court of Appeals carefully considered Petitioner's argument under *Strickland* and determined that he failed to demonstrate that counsel had performed deficiently. The court explained that to impeach Brown regarding the phone, trial counsel would have had to deviate from his "singular theory of misidentification" and present two "different and contradictory defense theories." ECF No. 10-8 at 10. "In the first, [Petitioner] *was not* present and had been misidentified. In the second, [Petitioner] *was* present, but he had not taken [Brown's] phone." *Id.* The Court agrees that it was not objectively unreasonable for trial counsel to decline to pursue a strategy that would have contradicted the defense's primary theory of the case. *See Strickland*, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.").

**Claim VI: Brown's DNA**

Petitioner argues that by failing to present evidence that the unidentified DNA on Brown's weapon was Brown's, trial counsel rendered ineffective assistance. The Missouri Court of Appeals again applied *Strickland*'s standard, crediting trial counsel's testimony that he prioritized a misidentification strategy, and that evidence of the DNA match was not significant as there was no dispute that the gun was Brown's. To the extent that the gun could have been used to impeach Brown, the court further concluded that Petitioner failed to demonstrate prejudice, as establishing that the unidentified DNA belonged to Brown would not have provided a defense to any of the crimes charged. Petitioner has not demonstrated that this was an

unreasonable application of Supreme Court precedent. *Cf. Bolden v. United States*, 171 F. Supp. 3d 891, 917 (E.D. Mo. 2016) ("[Petitioner] was not prejudiced by counsel's decision not to call an expert witness to testify on an issue that was not in dispute.").

**C. Procedural Default**

Respondent contends that Petitioner procedurally defaulted his remaining claims. At least as to Claims II, III, and VII, Petitioner concedes procedural default. *See* ECF No. 1 at 12, 16, 25. Petitioner argues, however, that his default should be excused under the exception established by the Supreme Court in *Martinez v. Ryan*, 566 U.S. 1 (2012).

A habeas petitioner under § 2254 may avoid procedural default only by showing that there was a cause for the default and resulting prejudice, or that a miscarriage of justice will result from enforcing the procedural default. *See Wainright v. Sykes*, 433 U.S. 72, 90–91 (1977). To establish cause, the petitioner must show that "some objective factor external to the defense" prevented his compliance with a state procedural rule. *Davila v. Davis*, 582 U.S. 521, 528 (2017) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Counsel's errors in post-conviction proceedings generally do not qualify as a cause for default. *See Coleman v. Thompson*, 501 U.S. 722, 752 (1991). In *Martinez*, however, the Supreme Court recognized a narrow exception to this general rule:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review proceeding, there was no counsel or counsel in that proceeding was ineffective.

566 U.S. at 17. The Supreme Court noted that the underlying ineffective assistance of trial counsel claim must be "a substantial one, which is to say that the prisoner must demonstrate that

the claim has some merit." *Id.* at 14. Finally, the Supreme Court has clarified that this exception does not apply to claims of ineffective assistance of appellate counsel. *Davila*, 582 U.S. at 525.

Petitioner has not demonstrated that post-conviction counsel provided ineffective assistance by failing to pursue Claims II, III, VII, or part of Claim VI, to completion. As discussed above, *Strickland* requires Petitioner to show that counsel's performance was objectively unreasonable and Petitioner was prejudiced by the deficient performance. 466 U.S. at 687. As discussed below, this Court finds that Claims II, III, VI, and VII are substantively meritless. Accordingly, it was not unreasonable for post-conviction counsel to decline to pursue those arguments, nor was Petitioner prejudiced. *See Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994) (per curiam) ("[C]ounsel's failure to advance a meritless argument cannot constitute ineffective assistance."). Because Petitioner's post-conviction counsel was not ineffective, his procedural default cannot be excused under the *Martinez* exception.

**Claim II: Lawfulness of the Stop**

Petitioner alleges ineffective assistance of trial, appellate, and post-conviction counsel for failing to argue that the stop that he resisted was unlawfully based on a "wanted" notice rather than probable cause. As discussed above, the *Martinez* exception only applies to trial counsel, rendering Petitioner's contention as to appellate counsel procedurally defaulted. *Davila*, 582 U.S. at 525.

Petitioner relies on *Furlow v. Belmar*, 52 F.4th 393 (8th Cir. 2022) for the proposition that an arrest based on his "wanted" notice would have been unlawful. However, Mo. Rev. Stat. § 575.150 makes clear that "[r]esisting arrest is unlawful regardless of the unlawfulness of the arrest." *State v. Winkelmann*, 776 S.W.2d 44, 45 (Mo. Ct. App. 1989). Moreover, in *Furlow*, the Eighth Circuit recognized that "wanted" notices can authorize investigatory stops. 52 F.4th at

403; *see also United States v. Hensley*, 469 U.S. 221, 232 (1985) (holding that a wanted flyer can justify a stop to "check identification, to pose questions to the person, or to detain the person briefly while attempting to obtain further information" (citation omitted)). Whether framed as a permissible investigatory stop or as the precursor to an allegedly unlawful arrest, there was sufficient evidence that Petitioner resisted the encounter with police. Accordingly, neither trial nor post-conviction counsel were ineffective for declining to pursue a meritless claim, and Petitioner cannot excuse his procedural default.

**Claim III: Accomplice Liability**

Petitioner next submits that counsel was ineffective for neglecting to argue that Petitioner lacked the culpable mental state needed to be found guilty of robbery on an accomplice liability theory. Petitioner is correct that, in order to be found guilty as an accomplice, "one must have the culpable mental state to have acted with the purpose of promoting the particular underlying offense." *Booker v. State*, 552 S.W.3d 522, 530 (Mo. 2018). "But 'the necessary intent may be based upon circumstantial evidence or inferred from surrounding facts such as the defendant's conduct before the act, from the act itself, and from the defendant's subsequent conduct.'" *Id.* (quoting *State v. Osborn*, 504 S.W.3d 865, 876 (Mo. Ct. App. 2016)). Here, evidence adduced at trial showed that Petitioner orchestrated the meeting that led to the robbery, shot another victim, told his masked accomplice to "[f]inish the job" or to "get it over with," and then fled the scene. ECF No. 10-1 at 305, 386. Any rational trier of fact could therefore have found the necessary intent from Petitioner's conduct before, during, and after the robbery, and Petitioner's third claim for relief must be denied.

**Claim VII: Variance**

Petitioner argues that trial counsel rendered ineffective assistance by failing to object to variances between the indictment and the jury instructions. Petitioner was charged with the robberies of Brown, Cunningham, and Clay under a theory of accomplice liability. According to Petitioner, the indictment specifically alleged that he acted with another to forcibly take a phone and currency from Cunningham, and a phone from Clay. Petitioner contends that he would have been acquitted of these charges, as Cunningham and Clay testified at trial that the masked man stole only a phone and cigarettes, respectively.

Under Missouri law, a variance between a charging document and the jury instructions must be material and prejudicial to cause reversible error. *State v. Lee*, 841 S.W.2d 648, 650 (Mo. 1992). A variance is prejudicial only if it affects the defendant's ability to adequately "defend against the charges presented in the information and given to the jury in the instructions." *Id.* At the time of Petitioner's offenses, Mo. Rev. Stat. § 569.020.1 read, in relevant part, "A person commits the crime of robbery in the first degree when he forcibly steals property and in the course thereof he, or another participant in the crime, (1) [c]auses serious physical injury to any person; or (2) [i]s armed with a deadly weapon." That the "property" was different in Petitioner's charging document from what his accomplice actually stole "does not alter the fact that the prosecution proved the essential elements of robbery in the first degree." *Herron v. Norman*, No. 10-cv-2046, 2014 WL 1210600, at *5 (E.D. Mo. Mar. 24, 2014). Because the underlying claim is meritless, counsel was not ineffective for failing to pursue it. *Rodriguez*, 17 F.3d at 226. Accordingly, Claim VII is denied.

**Claim VI: Alternative Defenses**

Finally, Petitioner alleges that trial counsel failed to present a self-defense theory and call a witness who would have given an alternative account of the shooting. As Petitioner did not

pursue these claims when seeking state post-conviction relief, they too are procedurally defaulted.[3] He argues the ineffective assistance of post-conviction counsel to excuse his procedural default.

As the Court understands it, Petitioner wanted trial counsel to present a theory of self-defense based on his brother's prior involvement with Bland. Petitioner notes that his brother and Bland were arrested together about a month before the encounter between Petitioner and Bland. Petitioner submits that this history gave the witnesses a motive to lie and gave him a reason to act in self-defense, though Petitioner does not present with particularity the basis for his arguments. Because there was "a lot of hearsay as to what went on" between Petitioner's brother and the victim, trial counsel informally agreed not to question witnesses regarding Petitioner's brother and the prior drug arrest, an agreement that Petitioner maintains constituted ineffective assistance. ECF No. 10-1 at 414.

The Court is not persuaded that counsel rendered ineffective assistance by agreeing not to delve into Bland's history with Petitioner's brother. First, to the extent that such testimony would have included hearsay, counsel did not perform deficiently by agreeing not to offer inadmissible evidence. *See Henderson v. Norris*, 118 F.3d 1283, 1288 (8th Cir. 1997). Second, to argue that Petitioner acted in self-defense based on his brother's previous encounter with Bland, trial

---

[3] Even though Petitioner presented his claim regarding Alfred Brown in his pro se Rule 29.15 motion, it is procedurally defaulted because post-conviction counsel did not include it in the amended motion. *See Interiano v. Dormire*, 471 F.3d 854, 856–57 (8th Cir. 2006) (holding that claims included in a pro se Rule 29.15 motion that were not included in the amended motion were procedurally defaulted). Moreover, post-conviction counsel's winnowing of the claims pursued is not ineffective assistance and does not excuse the procedural default. *See Morgan v. Cassady*, No. 14-cv-246, 2017 WL 87030, at *4 (E.D. Mo. Jan. 9, 2017) ("If, as with appellate counsel, one of post-conviction counsel's important duties is to focus on those arguments that are more likely to succeed, then counsel will not be held to be ineffective for failure to raise every conceivable issue." (citation modified)).

counsel would have had to undermine his misidentification strategy by placing Petitioner at the scene of the crime. Counsel made the decision to singularly pursue a misidentification defense, a strategic choice that is virtually unchallengeable. *See Strickland*, 466 U.S. at 690; *see also Ruff v. Armontrout*, 77 F.3d 265, 268 (8th Cir. 1996) (noting that counsel "need not raise every conceivable argument to defeat a claim of ineffective assistance of counsel").

As another defense theory, Petitioner alleges that trial counsel should have called Alfred Brown as a witness, who "described a sequence of events that was at odds with the purported victims." ECF No. 1 at 21. Petitioner asserts that Alfred Brown observed Donald Brown "firing his gun into the air," whereas Donald Brown testified that he had fired the gun in the car. *Id.*

The Court notes first that "[d]ecisions relating to witness selection are normally left to counsel's judgment, and this judgment will not be second-guessed by hindsight." *Williams v. Armontrout*, 912 F.2d 924, 934 (8th Cir. 1990) (citation modified). Even assuming that trial counsel altogether failed to investigate Alfred Brown as a potential witness, Petitioner must show that "the witness would have testified and that their testimony would have probably changed the outcome of the trial." *Siers v. Weber*, 259 F.3d 969, 974 (8th Cir. 2001) (citation modified). Petitioner cannot make such a showing. That Donald Brown may have fired his gun into the air, rather than in the car, does not negate that a man identified as Petitioner shot Bland, and that an armed accomplice robbed Brown, Clay, and Cunningham. Petitioner has therefore failed to demonstrate that Alfred Brown's testimony would probably have changed the trial's outcome, and his remaining grounds for relief under Claim VI are denied.

## IV. Conclusion

For these reasons, Petitioner is not entitled to habeas relief on any of the grounds asserted in his Petition.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Adrian Washington's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 is **DENIED**, and this case is hereby **DISMISSED**.

**IT IS FURTHER ORDERED** that because Petitioner has not made a substantial showing of the denial of a constitutional right, this Court will not issue a certificate of appealability.

A separate judgment will accompany this Memorandum and Order.

Dated this 21st day of October, 2026.

JOHN A. ROSS
UNITED STATES DISTRICT JUDGE